IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JEREMY JAMES BONSIGNORE**, | Case No. 2:22-cv-00820-IM |
| Petitioner, | **OPINION AND ORDER** |
| v. | |
| **SUPERINTENDENT SUSAN WASHBURN**, | |
| Respondent. | |

**IMMERGUT, District Judge.**

      Petitioner Jeremy James Bonsignore ("Bonsignore"), an individual in custody at Eastern Oregon Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254 ("Section 2254") challenging his 2017 manslaughter and burglary convictions in Clackamas County, Oregon. Because Bonsignore's claims are procedurally defaulted or were otherwise denied in a state-court decision that is entitled to deference, the Petition for Writ of Habeas Corpus (ECF No. 2) must be denied.

PAGE 1 – OPINION AND ORDER

## BACKGROUND

On August 10, 2015, a Clackamas County grand jury returned an indictment charging Bonsignore with two counts of Aggravated Murder; two counts of Murder; two counts of Burglary in the First Degree with a Firearm; and one count each of Unlawful Use of a Weapon and Menacing. (Resp't Exs. (ECF No. 19), Ex. 102 at 1-3.[1]) The charges arose from an incident in which Bonsignore shot and killed Andrae Fenner, a friend of Bonsignore's then-girlfriend, on or about July 28, 2015. (*Id.*)

Bonsignore subsequently agreed to plead guilty to one count of first-degree burglary with enhancements and one count of first-degree manslaughter, a lesser-included offense of aggravated murder. (Resp't Ex. 115 at 1.) In exchange, the State dismissed the remaining charges, and the parties agreed to a "total sentence of 300 months imprisonment" comprised of a 60-month term on the burglary conviction and a consecutive 240-month term on the manslaughter conviction. (*Id.* at 3-4.) The parties also agreed that Bonsignore would be eligible to earn up to 30 months of good time and earned time credits to reduce his sentence. (*Id.* at 4.) Bonsignore signed both a "Plea and Sentencing Agreement" and a "Petition to Enter Guilty Plea," acknowledging by doing so that he understood and agreed to the terms of the parties' agreement, that his decision to plead guilty was voluntary, and that he was satisfied with his attorneys' advice. (Resp't Exs. 103, 115.)

On September 12, 2017, Bonsignore appeared for a plea and sentencing hearing in the Clackamas County Circuit Court. The trial court reviewed the written plea agreement and the plea petition, confirming with Bonsignore that he had read them carefully, understood their

---

[1] When citing Respondent's Exhibits, the Court refers to the exhibit page numbers located in the lower right corner of each exhibit.

PAGE 2 – OPINION AND ORDER

contents, and had enough time with his attorneys to discuss his case before choosing to plead guilty. (Resp't Ex. 104 at 2-3.) The trial court specifically confirmed that Bonsignore understood that the parties had agreed to a recommended "25-year sentence with credit for time served with the ability to earn two and a half years off for earned time" if he pleaded guilty. (*Id.* at 3-4.) After indicating that he was "very" satisfied with his attorneys' advice and had no further questions for the trial court, Bonsignore formally entered guilty pleas on one count each of Burglary in the First Degree with a Firearm and Manslaughter in the First Degree. (*Id.* at 4-6.) The trial court accepted Bonsignore's guilty pleas as "knowingly, voluntarily, and intelligently made" and sentenced him in accordance with the parties' agreement. (*Id.* at 4-6, 18-19; Resp't Ex. 101.)

Bonsignore did not directly appeal the trial court's judgment but filed a petition for postconviction relief ("PCR"). (Resp't Ex. 105.) In his counseled amended petition, Bonsignore asserted a single claim of ineffective assistance of counsel, alleging that his trial attorneys failed "to adequately and fully inform [him] of the negotiated plea offer[.]" (Resp't Ex. 106 at 4.) Specifically, Bonsignore alleged that his trial attorneys failed to ensure he understood (1) that the plea offer "contemplated that [he] would serve prison time on both the Burglary and Manslaughter counts;" (2) that the "maximum sentence on Manslaughter was 20 years, and that he would serve that entire maximum sentence plus another 60 months on the Burglary charge;" and (3) that "the 300-month sentence was not under the Manslaughter count alone." (*Id.* at 5.) Bonsignore alleged that "had he understood that he would serve time on both the Burglary and Manslaughter charge, he would have rejected the plea offer and proceeded to trial." (*Id.* at 4.)

To support his claim, Bonsignore submitted his own declaration, attesting that he "did not understand the plea and sentence properly" before pleading guilty. (Resp't Ex. 110 ¶ 8.) Bonsignore claimed that he "had no idea that the Burglary and Manslaughter [sentences] would

PAGE 3 – OPINION AND ORDER

be 'stacked' or run consecutively" rather than concurrently, and that his "understanding [was] that [he] would get the maximum sentence allowed on the Manslaughter charge, and that would be the final and total sentence." (*Id.* ¶¶ 5-6.) Bonsignore thus attested that because he "only wanted to serve time on the maximum allowed on the Manslaughter, which [he] did not understand or know was 240 months[,]" he "would have rejected the 300 month negotiated plea [if he] had . . . known that it was a 'stacked' sentence with the Manslaughter running consecutively." (*Id.* ¶ 10.)

The State submitted in opposition the declaration of trial counsel Bruce Tarbox ("Tarbox"), among other things. (Resp't Ex. 116.) Tarbox attested in his declaration that he reviewed the plea petition and the written plea agreement with Bonsignore "line by line[,]" and that more than one attorney reviewed the plea petition with Bonsignore. (*Id.* ¶ 3.) Tarbox noted that he "clarified any issues or confusion [Bonsignore] may have had about the content of those documents" and otherwise "took the time to answer" his questions. (*Id.* ¶ 5.) Tarbox attested that he also went through the Uniform Criminal Judgment ("UCJ") form with Bonsignore "line by line and therefore would have informed him that the sentences for the two different convictions would be served consecutively." (*Id.* ¶ 4.) Tarbox further attested that he "would not have told [Bonsignore] that he was serving the entire 300-month sentence on the Manslaughter conviction alone if for no other reason than that it would be impossible" because "[n]o sentence on a Manslaughter conviction can exceed 240 months." (*Id.* ¶ 6.) Tarbox noted that the plea agreement ultimately was "crafted to equate [to] a murder sentence in the [total] number of months" because the Clackamas County District Attorney "wanted a murder sentence." (*Id.* ¶ 7.)

After a hearing during which the parties presented documentary evidence and oral argument, the PCR court issued a written judgment denying relief. (Resp't Ex. 118.) The PCR court concluded that Bonsignore had failed to establish the merits of his claim, explaining:

> [Bonsignore] did not prove that his trial attorneys failed to ensure that he understood that he would serve prison time on both his Burglary and Manslaughter convictions. The transcript demonstrates that [Bonsignore] was fully aware of the details of the sentence that would result from his plea agreement. The plea agreement clearly sets forth that [Bonsignore] was agreeing to serve 60 months on the Burglary I charge and 240 months consecutive on the Manslaughter I charge for a total of 300 months. He informed the court that he had read, signed and understood the plea agreement. [Bonsignore]'s statements at the change-of-plea hearing carry a strong presumption of verity. [Bonsignore]'s claim now that he did not understand the terms of the plea agreement are not credible. If the explanation of his sentence during his plea was a surprise to him, the court gave him the opportunity to indicate his surprise or confusion. [Bonsignore] confirmed for the court that he understood that he was receiving a 25-year sentence with credit for time served and the ability to earn two and a half years off that sentence for earned time. He also confirmed that, after having heard at sentencing that he was receiving a 25-year sentence with credit for time served and the ability to get earned time, . . . he had no questions for the court.
>
> Trial counsel confirms that [Bonsignore] was informed by the defense about the specific charges for which he would be convicted and the details of how the sentences for those charges would be served. Trial counsel Tarbox testifies that he went through the plea petition, plea and sentencing agreement with [Bonsignore]. He went through those documents with [Bonsignore] line by line. He was not the only one. More than one attorney went through the petition with [Bonsignore]. Trial counsel Tarbox also went though the UCJ form line by line with [Bonsignore]. That form informed [Bonsignore] that the sentence for the Manslaughter and Burglary convictions would be served consecutively. Tarbox clarified any issues or confusion that [Bonsignore] may have had about the contents of the documents if [Bonsignore] asked about it. Trial counsel did not tell [Bonsignore] that he was serving the entire 300-month sentence on the Manslaughter conviction alone. No sentence on a conviction for Manslaughter in the First Degree can exceed 240 months. Moreover, there is no real functional difference, even in the unlikely event that [Bonsignore] somehow believed that he was serving a 300-month sentence for Manslaughter.

(Resp't Ex. 118 at 2.)

Bonsignore appealed the PCR court's judgment, renewing his claim that his trial attorneys were ineffective in failing to ensure that he understood the terms of the plea agreement.

PAGE 5 – OPINION AND ORDER

(Resp't Ex. 119.) In a written *per curiam* opinion, the Oregon Court of Appeals observed that evidence in the record supported the PCR court's factual findings, including its finding that Bonsignore had "adequately understood the terms of the plea agreement." *Bonsignore v. Cain*, 315 Or. App. 492, 493 (2021). The Court of Appeals reasoned that the PCR court's factual findings "preclude[d] the determination that petitioner lacked understanding of th[e] plea agreement[,]" which in turn "preclude[d] the conclusion that [Bonsignore] was entitled to relief on his claim of inadequate and ineffective assistance of counsel." *Id.* The Court of Appeals thus affirmed the PCR court's judgment, *id.*, and the Oregon Supreme Court denied review. *Bonsignore v. Cain*, 369 Or. 504 (2022).

On June 2, 2022, Bonsignore filed a Petition for Writ of Habeas Corpus in this Court, raising a single ground for relief based on the ineffective assistance of counsel. (Pet. (ECF No. 2), at 6.[2]) Specifically, Bonsignore alleges that his trial attorneys were ineffective when they "[(1)] failed to conduct a proper investigation of the case; [(2)] failed to properly advise[] [Bonsignore] of plea agreement; [(3)] did not conduct a pre-sentence investigation; [(4)] failed to properly advise with respect to the sentencing guidelines grid; [and] [(5)] failed to properly produce discovery." (*Id.*) Respondent urges this Court to deny habeas relief, arguing that the state-court decision denying Subpart 2 of Ground One is entitled to deference and that the remaining subparts are procedurally defaulted. (Resp. to Pet. (ECF No. 17) at 5-13.) Respondent also argues, in the alternative, that Bonsignore failed to meet his burden of establishing that he is entitled to habeas relief as to Subparts 1, 3, 4 and 5 because he did not advance the merits of those claims in his supporting brief. (Resp't's Reply to Pet'r's Br. (ECF No. 37) at 2-3.)

---

[2] The Court refers to the ECF-assigned pagination when citing to the Petition or the parties' briefing in this case.

PAGE 6 – OPINION AND ORDER

## DISCUSSION

I.  **This Court Must Defer to the State-Court Decision Denying Relief on Subpart 2 of Ground One**

In Subpart 2 of Ground One, Bonsignore renews his claim that his trial attorneys were ineffective in failing to properly advise him about the plea agreement, arguing that he "did not understand the statutory maximum for manslaughter nor that the agreement called for him to receive a sentence that exceeded the maximum available for manslaughter." (Pet'r's Br. (ECF No. 33) at 12-13.) Respondent argues that the Oregon Court of Appeals reasonably affirmed the PCR court's judgment denying relief on this claim and that this Court must defer to that decision. (Resp. to Pet. at 11-13.) This Court agrees.

A.  **Legal Standard**

1.  **Deference to State-Court Decisions Under AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") prohibits relitigation of any claim adjudicated on the merits in state court unless such adjudication resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The AEDPA thus imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (simplified); *see also White v. Wheeler*, 577 U.S. 73, 76-77 (2015) (acknowledging that the "AEDPA, by setting forth necessary predicates before a state-court judgment may be set aside, erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court") (simplified).

PAGE 7 – OPINION AND ORDER

A state-court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law occurs if the state court correctly identifies the governing legal principle but misapplies that principle to the facts at hand. *See id.* at 407 (holding that "a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"). The "unreasonable application" clause requires the state court's decision to be more than merely erroneous or incorrect. *See id.* at 411 (noting that "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"). Rather, the state court's application of clearly established federal law must be objectively unreasonable. *See id.* at 409 (instructing that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").

A federal habeas court may not disturb a state-court decision on factual grounds unless the state court's decision was based on an unreasonable determination of the facts in light of the evidence before it. 28 U.S.C. § 2254(d)(2). Under the "unreasonable determination" clause, "[t]he question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The Ninth Circuit has clarified that when a petitioner

challenges the substance of a state court's findings, the federal habeas court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.), *cert denied*, 543 U.S. 1038 (2004). "The petitioner carries the burden of proof." *Pinholster*, 563 U.S. at 181.

### 2. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy a two-part test. First, the petitioner must establish that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Such a showing requires the petitioner to overcome a strong presumption that the challenged conduct falls within the "wide range of reasonable professional assistance; that is the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Second, a petitioner must demonstrate prejudice: "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* Therefore, it is not enough if counsel's errors had only "some conceivable effect on the outcome of the proceeding." *Id.* at 693. However, where, like here, counsel's alleged ineffectiveness arises from the plea process, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This inquiry can "closely resemble[s] the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial" because whether counsel's errors prejudiced a petitioner by

causing him to plead guilty can depend, in large part, on a prediction about the outcome at a possible trial. *Id.* at 59-60.

Whether in the context of a trial or guilty plea, analyzing an ineffective assistance of counsel claim under the AEDPA is "all the more difficult" because both standards are "highly deferential and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Accordingly, when considering an ineffective assistance claim under the AEDPA, the relevant question "is not whether counsel's actions were reasonable[,]" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### B. Analysis

As noted above, Bonsignore advanced a claim similar to Subpart 2 of Ground One during his PCR proceedings, arguing that his trial attorneys failed to ensure that he understood that the negotiated plea would result in a 300-month total sentence comprised of separate, consecutive sentences for burglary and manslaughter. Specifically, Bonsignore claimed that he "thought he would only serve time on the Manslaughter alone[.]" (Resp't Ex. 106 at 5.) The PCR court denied relief, and Bonsignore renewed the claim on appeal. The Oregon Court of appeals ultimately rejected the claim and affirmed the PCR court's judgment, explaining:

> . . . [T]he [PCR] court found that [Bonsignore] adequately understood the terms of the plea agreement. Those findings are supported by the record. The record shows that [Bonsignore] signed a plea agreement that acknowledged his understanding of its terms in addition to hearing those terms repeated by the court at the plea colloquy. In addition, trial counsel for [Bonsignore] declared that he reviewed the plea agreement with [Bonsignore] to ensure his understanding of it. The plea and sentencing agreement specified that [Bonsignore] would be sentenced to 60 months for his burglary conviction and 240 months for his manslaughter conviction. That same agreement included the express terms that [Bonsignore] "further stipulates that this sentence [for manslaughter] will be served consecutive to the Burglary conviction (with firearm minimum sentence of 60 months)." Furthermore, the agreement reiterated that [Bonsignore] would serve a total of

PAGE 10 – OPINION AND ORDER

> 300 months' imprisonment with a maximum 30-month reduction for good or earned time.
>
> The [PCR] court's factual findings are supported by evidence in the record. Those factual findings preclude the determination that [Bonsignore] lacked understanding of this plea agreement and, therefore, preclude the conclusion that [Bonsignore] was entitled to relief on his claim of inadequate assistance of counsel.

(Resp't Ex. 138 at 6.)

The Oregon Court of Appeals's decision was not objectively unreasonable.[3] As the Court of Appeals explained, there was ample evidence in the record to support the PCR court's factual findings. The plea petition and the plea and sentencing agreement clearly and explicitly set forth the resulting sentence if Bonsignore pleaded guilty. (*See* Resp't Exs. 103, 115.) The agreement specified that Bonsignore's guilty pleas would result in a sentence of 60 months in prison on the burglary charge, and 240 months in prison on the manslaughter charge to "be served consecutive to the Burglary conviction" for "a total sentence of 300 months imprisonment[.]" (*Id.* at 3-4.) Bonsignore signed both documents, acknowledging that he had "reviewed th[e] agreement with counsel and specifically understands and agrees with the terms of th[e] agreement[.]" (*Id.* at 4-5; Resp't Ex. 103 at 2.) The UCJ form also memorialized the agreement, expressly stating that Bonsignore would receive a 60-month sentence for burglary and a consecutive 240-month sentence for manslaughter. (Resp't Ex. 114.)

---

[3] Because the Oregon Supreme Court denied review, this Court must look to the last reasoned decision on the issue, i.e., the Oregon Court of Appeals' decision affirming the PCR court's denial of Bonsignore's ineffectiveness claim. See *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (explaining that where the highest state court issues a decision on the merits unaccompanied by its reasons for the decision, a federal habeas court must "look through" to the last reasoned decision issued in a lower state court, and presume the unexplained decision adopted the same reasoning).

PAGE 11 – OPINION AND ORDER

Furthermore, during his plea colloquy in the trial court, Bonsignore confirmed that he had carefully read the plea agreement and the plea petition and that he understood their contents. (Resp't Ex. 104 at 2.) He specifically confirmed that pursuant to the agreement, he would receive "a 25-year sentence with credit for time served with the ability to earn two and a half years off for earned time" if he pleaded guilty to first-degree burglary and manslaughter. (*Id.* at 3.) Bonsignore also told the trial court that he was "very" satisfied with his attorneys' advice and denied having any further questions before entering his guilty pleas. (*Id.* at 4.) At no point did Bonsignore voice any confusion, doubt, or surprise as to the terms of the agreement or the agreed upon sentence.

Finally, Tarbox attested in his declaration that he reviewed the plea petition and the written plea agreement with Bonsignore "line by line[,]" answered his questions, and resolved any confusion or misunderstanding about the substance of those documents. (Resp't Ex. 116 ¶¶ 3, 5.) Tarbox also attested that he reviewed the UCJ form with Bonsignore line by line, that the form "specifically inform[ed] [Bonsignore] that the 240-month sentence for the Manslaughter conviction would be imposed consecutively to the 60-month sentence for Burglary," and that he would have explained to Bonsignore at that time that "the sentences for the two different convictions would be served consecutively." (*Id.* ¶ 4.) Tarbox denied that he would have told Bonsignore that the 300-month sentence was for manslaughter alone, as the statutory maximum is 240 months. (*Id.* ¶ 6.)

Given this evidence, the PCR court's determination that Bonsignore was aware of and understood the terms of the plea agreement, including the sentence he would receive, was supported by the record. Bonsignore nevertheless maintains that he "reasonably understood his plea to be an agreement to serve the maximum time allowed for manslaughter[,]" which he

PAGE 12 – OPINION AND ORDER

believed to be 300 months. (Pet'r's Br. at 13.) The plea agreement specifically noted, however, that first-degree burglary and manslaughter are each "punishable by *a maximum sentence of incarceration of twenty years*[,]" but that he would receive a 300-month combined sentence. (Resp't Ex. 115 at 3 (emphasis added).) The trial judge reiterated the same during Bonsignore's change of plea hearing, ensuring that Bonsignore understood that burglary and manslaughter each carry a sentence of "up to a total of 20 years in custody" but that he had agreed to plead guilty to both charges in exchange for a 25-year sentence. (Resp't Ex. 104 at 3.) Bonsignore's representations to the trial court that he understood these points "carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977). Bonsignore's additional arguments are without merit.[4]

In light of the forgoing, this Court cannot conclude that the Oregon Court of Appeals unreasonably applied federal law or made unreasonable factual determinations in affirming the PCR court's judgment finding that Bonsignore's decision to plead guilty was knowing, intelligent, and voluntary, and that trial counsel adequately advised Bonsignore with respect to that decision. Because Bonsignore has failed to establish that the ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[,]" *Richter,* 562 U.S. at 103, it is entitled to deference. This Court thus denies habeas relief as to Subpart 2 of Ground One.

///

///

---

[4] To the extent Bonsignore faults the PCR court for "failing to grasp" that his "objection was to being treated more akin to [a] murderer than to someone who had committed manslaughter," and that he therefore "did not agree to a sentence that exceeded the maximum allowed for manslaughter[,]" (Pet'r's Br. at 15), this Court notes that Bonsignore did not articulate that argument to the state appellate courts.

PAGE 13 – OPINION AND ORDER

**II.     Bonsignore is not Entitled to Habeas Relief on his Unargued Claims**

Bonsignore does not provide any legal argument in support of Subparts 1, 3, 4, or 5 of Ground One. In addition, Bonsignore does not challenge Respondent's arguments that those claims are procedurally defaulted. Bonsignore thus has failed to sustain his burden of demonstrating why he is entitled to habeas relief on those claims. *See* 28 U.S.C. 2248 (instructing that "[t]he allegations of a return to the writ of habeas corpus . . . , if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true"); *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (recognizing that a habeas petitioner carries the burden of proving his case). Nevertheless, the Court has reviewed Subparts 1, 3, 4, and 5 and is satisfied that Bonsignore is not entitled to habeas corpus relief on those claims.

## CONCLUSION

For the reasons stated, this Court DENIES the Petition for Writ of Habeas Corpus (ECF No. 2), and DISMISSES this proceeding, with prejudice. Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore this Court DENIES a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

DATED this 14th day of June, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge